UNION PARISH SOCIETY *vs.* THE INHABITANTS OF UPTON.

Oxford. Opinion March 12, 1883.

*Constitutional law. Ministerial fund. Stat, 1832, c. 39. R. S., c. 12, § 43, et seq.*

The legislation of this State which diverts the proceeds of sales of lands reserved for public uses from the ministerial fund to the fund for public schools, in cases where the fee to such lots has not vested in any beneficiary, is constitutional.

In 1788 a resolve of the legislature of Massachusetts, declared that there be reserved, in each of certain townships in the then District of Maine, four lots for public uses, one of which should be for the ministry in the township, when incorporated. In 1804 that Commonweath, by its agents, conveyed one of the townships to a purchaser, the deed to be valid upon the performance of certain conditions imposed upon the purchaser, and containing a reservation of the public lots. The law diverting the funds was passed by the legislature of Maine in 1832. The township was incorporated as the town of Upton in 1860. The first parish was incorporated in 1879. *Held,* that the parish is not entitled to the proceeds of the sale of the timber and grass upon the lot in such town originally declared to be designed for the ministry; and that the funds may properly be applied by the town to the use of its public schools.

BILL IN EQUITY.

Heard on bill, answer and proof.

The opinion states the facts.

The case was very ably and elaborately argued by *John J. Perry,* for the plaintiffs, and by

*Enoch Foster,* for the defendants.

PETERS, J. The question presented is this : Was the law of 1832, which diverted the proceeds of sales of reserved lands from the ministerial fund to the fund for public schools, constitutional? The law, by its terms, was to apply only to lands where the title had not vested in any beneficiary. The law of 1832, has been preserved through different enactments,

and is contained in several sections of our present revised statutes. R. S., c. 12, § 43, sections following.

The facts which govern the case are these: On March 26, 1788, the commonwealth of Massachusetts passed resolves in relation to the unappropriated public lands in Cumberland and Lincoln counties. One of the resolves authorized the committee on eastern lands "to mark out the unlocated lands into townships." Another resolve declared "that there be reserved in each township four lots of 320 acres each, for public uses," —naming the uses. A third resolve authorized the committee to make sales of lands in such quantities and upon such terms as they should judge to be most for the interest of the commonwealth. On June 14, 1804, a special resolve of the commonwealth empowered the committee to convey township B, now the town of Upton, to the assignees of a party who had previously bargained for its purchase. On June 30, 1804, the committee delivered a deed as directed by the resolve, the deed containing this clause, "Excepting and reserving, however, four lots of 320 acres each for the following uses, viz. — One lot for the first settled minister, his heirs and assigns, — one lot for the use of the ministry, — one lot for the use of schools in said township, — and one lot for the future disposition of the general court," &c. &c. The deed was to be valid upon the performance by the grantee of certain conditions respecting payment and in obtaining settlements upon the township. The township was incorporated into a town by the name of Upton in 1860. The plaintiffs were incorporated as a parish in 1879. The reserved lots have been located, the growth and timber thereon sold, payment therefor received, and the money arising therefrom has been wholly disbursed to schools and no part to the minister or ministry. The bill seeks to obtain a share thereof for ministerial purposes.

After the district of Maine became a state, it was found that there was a variety of acts and resolves of Massachusetts, passed in pursuance of the policy of appropriating lands for public purposes, the lands situated mostly in Maine, different enactments having different charitable objects in view, and

extending different legal rights to beneficiaries. It was deemed. impracticable and inexpedient to carry all of the purposes of the commonwealth expressed in its legislation into literal effect.. While the charities were to be upheld, it was thought best to turn all of them that could be into the channel of the public schools. So the law of 1832, c. 39, was passed, some legislation,. in 1824 and 1831, preceding the law of 1832, and leading to it.. Acts of 1824, c. 254, § 4. Of 1831, c. 492. The act of 1832,. in its substance kept alive from then till now, provides that the proceeds arising from the sales of such ministerial lands as had "not vested in any parish or individual," should be applied to the support of public schools. This act is declared, by the complainants in this bill, to be unconstitutional, as altering or attempting to alter vested rights. We think otherwise.

. No doubt, Maine could do in relation to these lands within her boundaries what Massachusetts could have done had there been no act of separation. The commonwealth's sovereignty over the lands, by the bargain of separation, or as a consequence of it, fell upon the state of Maine. This proposition, we think,. needs no discussion for its proof. *State of Maine* v. *Cutler*, 16 Maine, 349 ; *Dillingham* v. *Smith*, 30 Maine, 370, 381.

What had occurred prior to 1832, to take from either Massachusetts or Maine, the fee, or control of the fee, of the reserved lots in Upton ?

In 1788, Massachusetts resolved that there should be reserved from a conveyance of the land certain lots for public uses. This resolve conveys no lots or land. There are no words of grant in it. It merely establishes or declares a policy to except from the conveyance of the public lands certain lots when. conveyances should be made. Land may be conveyed by a legislative resolve, but not by such a resolve as this. *Cary* v.. *Whitney*, 48 Maine, 516, and at pp. 526, 527 ; and cases there cited.

In 1804, the deed passed to the grantees named therein. This deed contains an exception, and it is stated in the deed what the lots are excepted for. But this exception enures to the grantor ; not to a stranger. It grants nothing to any parish or minister

in Upton. No trust was perfectly created by it. There might never be an incorporated town or parish. The deed itself might not remain operative. It might become forfeited for the conditions named in it. The deed did not, *ipso facto*, create an appropriation of land for ministerial purposes. It merely reserved to the grantors the right and means of creating a trust, according to their declared public policy, should opportunity offer. By means of the exception, something was to be or might in the future be appropriated. It was a prospective provision for a gift, but not a gift *per se.* The nature of such a reservation of lots for public uses is well and clearly described by SEWALL, J., in *Rice* v. *Osgood,* 9 Mass. 38, 43, in accordance with our own views, although in that case another form of reservation, in substance the same, was under discussion. If not for legal reasons, certainly for great moral and political consider- ations, the state of Maine has ever been willing to effectuate the designs and policy of the parent commonwealth in relation to all of the lands reserved or appropriated by her for public uses within the limits of this state, — modifying the original plan in such respects only as the growth of society and the needs and the sentiments of the community would seem to demand and make reasonable.

The complainants rely upon certain cases to establish the point of unconstitutionality. We think the cases do not sustain the position taken. The cases cited are: *Richardson* v. *Brown,* 6 Maine, 355; *Trustees of New Gloucester* v. *Bradbury,* 11 Maine, 125; *Yarmouth* v. *North Yarmouth,* 34 Maine, 411; and *Humphrey* v. *Whitney,* 3 Pick. 158. The facts in those cases differ from the facts of this case. In those cases the lands had vested in the beneficiaries. Here it was not so. In those cases the gift had been executed. In all the cases where any act of legislation has been declared by the courts to be invalid as affecting or disturbing rights which had become vested in the public or reserved lands, an examination will show that the right had vested in the beneficiary, either by express deed, or by legislative act declaring a grant, or by an incorporation of the town or parish, or by an actual acceptance and long enjoyment

of the gift with the express or implied acquiescence of the grantor or giver. The case at bar falls outside of those classes of cases.

*Bill dismissed with costs.*

APPLETON, C. J., BARROWS, DANFORTH, VIRGIN and SYMONDS, JJ., concurred.